UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ERNEST A. BAGIENSKI, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1578-SEB-JMS |
| | ) | |
| MADISON COUNTY, INDIANA, JOHN | ) | |
| RICHWINE, In his official capacity, and | ) | |
| PATRICIA DILLION, in her official | ) | |
| capacity, | ) | |
| Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND REMANDING STATE LAW CLAIMS**

On October 11, 2005, former Madison County Highway Superintendent, Ernest A.

Bagienski ("Bagienski"), filed a Complaint in the Madison Superior Court, and on

October 19, 2005, Defendants removed the cause to this court, pursuant to 28 U.S.C. §§

1441 and 1446.  Now before us is Defendants' motion for summary judgment filed by

Madison County (Indiana) as well as John Richwine and Patricia Dillion, in their official

capacities as commissioners of Madison County.  In Count I of the Complaint, brought

pursuant to 42 U.S.C. § 1983, Bagienski alleges that he was fired because of his political

affiliation, in violation of the First Amendment, and without due process, in violation of

the Fourteenth Amendment.  In Count II, Bagienski alleges a state law claim of breach of

his employment agreement.

Regarding Count I, Defendants argue that Bagienski's first amendment and due

process claims cannot succeed because Bagienski's political affiliation was not a motivating factor in his dismissal, that he held a "policymaking" position which was exempt from First Amendment considerations, and that he did not have a protectable property interest in his continued employment implicating his due process rights. Bagienski responds that there is sufficient evidence upon which the finder of fact could conclude that his discharge was based on political reasons and that, contrary to Defendants' assertions, he did not occupy a "policymaking" position that was exempt from First Amendment considerations.

For the reasons detailed in this entry, summary judgment is <u>GRANTED</u> in favor of Defendants on Count I of Plaintiff's Complaint, which asserts a civil rights violation pursuant to § 1983; the remaining state law breach of employment agreement claim in Count II is <u>REMANDED</u> to state court.

<u>STATEMENT OF MATERIAL FACTS</u>

*Bagienski's Employment History With the Highway Department*

Ernest Bagienski, a Democrat, was hired by the Madison County highway department on a part-time basis as a security officer in 1989.  Defs.' Memo in Supp. at 1, citing Bagienski depo. p.8, Compl. ¶ 4.  He later transferred to full-time positions, first, as a truck driver and, next, as drainage coordinator and line supervisor.  <u>Id.</u> at 2, citing Bagienski depo. pp. 8-9.  In 1995, Bagienski was named interim superintendent of the highway department and, in 1996, he was made superintendent on a permanent basis.  <u>Id.</u>

citing Bagienski depo. pp. 9-10.  When Bagienski initially was hired by the County and when he subsequently was promoted to superintendent, two of the three commissioners on the Madison County Board of Commissioners also were Democrats.  Bagienski depo. at 13.

*Job Description of the Position of Superintendent of the Madison County Highway Department*

The job description covering the position of supervisor (superintendent) of the Madison County highway department was originally formulated in 1985 and thereafter periodically revised, the most recent revision occurring in 1998.  (Defs.' Memo in Supp. at 2, citing Auker[1] aff., ex. 1, p.1 at Docket No. 28.)  According to the 1998 version of the job description, the superintendent:

> – Exercises responsibility for the administration and direction of all departmental personnel[2] and operations.  <u>Id.</u>
>
> – "Plans, assigns and directs manpower and material resources to maintain all county roads, rights-of-way, and related areas in a clean manner and to ensure the safety of users during routine and emergency circumstances."  <u>Id.</u>
>
> – Evaluates equipment, maintains an inventory of supplies and recommends purchases of equipment and supplies to the county commissioners.  <u>Id.</u>
>
> – Formulates, prepares and submits the department's budget and administers it after approval.  <u>Id.</u>
>
> – Oversees the hiring, training, discipline and evaluation of staff.  <u>Id.</u>

---

[1]  Terry Auker is the Risk Manager and Director of Human Resources for Madison County, Indiana.  Aff. of Auker, at Docket No. 28.

[2]  Bagienski estimates that, when he became Superintendent, the highway department employed approximately 85 people.  (Defs.' Memo in Supp. at 2, citing Bagienski depo., p. 10.)

– Receives and investigates complaints of road conditions from citizens and "initiates appropriate action to resolve valid complaints." Id.

The position requires an ability to plan and develop budget requests, to develop departmental personnel policies and to formulate long and short-range construction and maintenance plans. Defs.' Memo in Supp. at 2, citing Auker aff., ex. 1, p. 2. The superintendent is "required to exercise independent judgment in making decisions and recommendations to oversee and direct the operations of the County Highway Department." Id. He "receives general guidelines and instructions from the County Commissioners, and is responsible for directing the department in implementing policies and procedures in manners consistent with County goals and objectives. Work os [sic] generally reviewed by the Commission to determine overall soundness of judgement and attainment of objectives." Id.

Bagienski argues that the job description for the position of supervisor (superintendent) of the Madison County Highway Department does not conform with the tasks he actually performed. He testified that his duty as superintendent was to execute the orders of the county commissioners. Bagienski depo., p. 13. He represents that he had limited authority, but acknowledges that he made recommendations to the commissioners on matters such as road paving schedules, the maintenance of the roads, the purchase of new equipment, and the hiring and firing of personnel. Defs.' Memo in Supp. at 3; citing Bagienski depo. pp. 17-18. Bagienski would also prepare a budget for the Commissioners' approval, pay claims, and generally oversee administrative operations. Bagienski depo. p. 15. Bagienski testified that his duties were performed

under the supervision of the County Engineer who had primary responsibility over the highway department.  Pl.'s Resp. at 3, citing Bagienski depo., p. 15.

*Board of Commissioners Decision not to Reappoint Bagienski*

John Richwine and Patricia Dillon were elected in 2004 as Madison County Commissioners.  Both are Republicans; they took office on January 1, 2005.  Their election shifted the majority on the Board from Democrat to Republican.[3]  Although the appointment of county department heads traditionally occurred at the first meeting of the Board of Commissioners (which would have been in January 2005), the matter was tabled to allow the new board to evaluate the performance records of the incumbent department heads.  Richwine depo. p. 35-37.  At his deposition, when asked how he evaluated these employees' performances, Commissioner Richwine responded he made his evaluations through "hands-on" discussions, meetings with those officials, and direct observations.  Id. at 37.  However, Richwine has acknowledged that he did not conduct any such formal evaluation of Bagienski's performance, nor did he review Bagienski's personnel file prior to deciding to terminate his employment.  Defs.' Resp. at 2, citing Richwine depo. pp. 38, 48.

Richwine testified that he "was leaning against reappointment of Bagienski based

---

[3]  The newly constituted Board thus consisted of two Republicans (Richwine and Dillion) and one Democrat (Paul Wilson).  See Bagienski depo. pp. 21, 23, 30-31; Defs.' Memo in Supp. at 6-7.

upon his perception of the morale of the workers at the highway department, absences of Bagienski from the department during work hours and reports of unfair discipline in the department." Defs.' Memo in Supp. at 3; citing Richwine depo. p. 43, 52-54. He recalled a conversation he had with Bagienski on January 12, 2005, in the commissioners' office during which Bagienski advised him that if he (Bagienski) were moved to a rank and file position, he would sue Richwine and the County. Defs.' Memo. in Supp. at 3, citing Richwine depo., p. 40. Bagienski recalls that this conversation occurred in a hallway in the courthouse, during which he advised Richwine that he would be cooperative in his removal as superintendent, if the board did it in the "right way." Otherwise, he threatened that he would see Richwine in court. Id., citing Bagienski depo., p. 24-25.

On January 13, 2005, Bagienski was summoned to a meeting with Commissioner Richwine and Dillon and advised that he would not be reappointed as superintendent. Defs.' Memo in Supp. at 4, citing Richwine depo. pp 39-40; Bagienski depo. p. 33. Bagienski notes that the written notice of his discharge which he received had been signed by only the Republican commissioners. Further, he asserts that the decision to let him go was made by only the Republican commissioners. Pl.'s Resp. at 3; citing Dillon depo, pp. 36, 42.

Bagienski inquired at the time of his discharge whether he could be transferred into another position within the department. Richwine depo. p. 46. Richwine testified that there was a position open within the department at the time of Bagienski's discharge. In addition, three new truck drivers were hired by the County subsequent to Bagienski's discharge. Richwine depo., p. 46.

Bagienski was the only department head who was not reappointed after that election.  Richwine depo. p. 39.  Several months later, after the position was advertised, his successor, Kevin McNew, was hired.  Richwine testified that he did not know McNew's political affiliation prior to his being hired.[4]  Richwine depo. pp. 45-46, 50.

Bagienski concedes that he had neither a statutory or contractual right to retain the position of superintendent of the highway department.  Id. citing Bagienski depo., pp. 35-36.

*Bagienski's Involvement with the Madison County Democratic Party*

In 2004, Bagienski had participated in the election campaign of Democrats Otis Cox and Ted Waymire, who ran against Republicans John Richwine and Pat Dillion for County Commissioner.  Bagienski actively campaigned for these Democratic nominees by holding golf outings, wine-and-cheese receptions, events at the horse track, and luncheon fund-raises for the candidates.[5]  Bagienski depo. at 21.

Richwine knew that Bagienski was a Democrat and that he had participated in Otis Cox's election campaigns.  Pl.'s Resp. at 2, citing Richwine depo., p. 28-29.  During the campaign, Richwine had seen Bagienski at a couple of parades.  Id.  Dillion also was

---

[4] McNew had not previously worked for the county highway department.  His former employment was with the state.  Richwine dep. at 50.

[5] Bagienski also "made signs, [and] walked."  It is unclear from the record what the signs said or where he was walking, but in any event, he did so in support of the unsuccessful Democratic nominees.

aware of Bagienski's political party affiliation but did not have knowledge of any of his specific political activities.  Pl.'s Resp. at 2, citing Dillion depo., p.23.  Richwine denied having had any knowledge of Bagienski's role in recruiting a Democratic candidate, Ned Dunnichay, to run against him in a previous election.  See Bagienski depo., pp. 43, 44; Richwine depo., p. 28-29.

*County Highway Department Collective Bargaining Agreement*

When Bagienski was first appointed highway department superintendent, a collective bargaining agreement was in effect between the department and the American Federation of State, County and Municipal Employees, Local 3609 covering the years 1995 to 1999.  Defs.' Memo in Supp. at 4, citing Auker aff., ex. 2.  That agreement provided in part:

> Any employee who has been transferred to a position not in the bargaining unit (including supervision) shall not forfeit any of their (sic) seniority rights and shall have the right to return to the bargaining unit, providing there is a vacancy. Such positions relate to positions within the County Highway Payroll Funds.

Id., citing Auker aff., ex. 2, p. 7, art X.  The 1995-1999 agreement expired on December 31, 1998, and was superseded by successive agreements through 2005.  Id., citing Auker aff., ex. 2-5.

According to Auker, the 2002-2004 agreement set terms and conditions of employment applicable to full-time, hourly-rated labor, trade and craft employees

employed by the Madison County highway department.  Auker aff. ex. 4, p.1.  The
superintendent and the foreman positions were not included in the bargaining unit
covered by the agreement.  Bagienski depo. p. 26.  However, the 2002-2004 agreement
retained the same provision quoted above from the 1995-1999 agreement regarding the
retention of seniority rights.  Auker aff., ex. 4, p. 6, art. 10.

The 2002-2004 agreement also provided a grievance procedure available to any
employee to resolve issues relating to the implementation or application of the agreement.
The grievance provision required that attempts be made to resolve disputes through
meetings among the employer, union representatives and management.  If a dispute could
not be resolved in this fashion, the matter would go to binding arbitration.  Auker aff. ex.
4, p.2 art. 3.

After Bagienski learned that he would not be reappointed to the highway
superintendent position on January 13, 2005, he did not file a union grievance regarding
his dismissal from the department.  Bagienski depo. p. 35.  Instead, he initiated this
litigation by filing his complaint in the Madison Superior Court, which, as noted
previously, was thereafter removed to this court.

LEGAL ANALYSIS

**I.      Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. <u>See id.</u> at 255. However, neither the "mere existence of some alleged factual dispute between the parties," <u>id.</u>, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. <u>Michas v. Health Cost Controls of Ill., Inc.</u>, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. <u>Id.</u> at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. <u>Waldridge v. Am. Hoechst Corp.</u>, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the

party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).


**II.     Count I:      Violation of Civil Rights, Pursuant to 42 U.S.C. § 1983**


In Count I of the Complaint, Bagienski has brought a civil rights action against Defendants alleging that he was fired from his position as superintendent of the Madison County Highway department in retaliation for his political beliefs, affiliation and activities, in violation of the First Amendment, and without due process in violation of the Fourteenth Amendment.

### A.      First Amendment Claim: Retaliation Based on Political Affiliation

Bagienski asserts that he was terminated from his employment with the County because of his affiliation with and activities on behalf of the Democratic party.  Compl. ¶9.  "[D]ismissals of public employees for reasons of political patronage are violations of the First Amendment," Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1259 (7th Cir. 1985), "unless party affiliation is an appropriate requirement for the position involved." Rutan v. Republican Party of Illinois, 497 U.S. 62, 64, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (citing Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).

Defendants maintain that Bagienski cannot demonstrate that the failure to reappoint him as highway superintendent was the result of his party affiliation and, even if he could demonstrate such animus on behalf of the commissioners, his claim would fail because the highway superintendent position is a "policymaking" position and thus political loyalty is a valid consideration.  See Def. Memo in Supp. at 5.  In response, Bagienski contends that there are material questions of fact regarding both the motive behind his discharge and whether party affiliation is an appropriate requirement for the effective performance of the highway superintendent position and that the existence of such controverted facts forecloses summary judgment.  Pl.'s Resp. at 4.

### 1.      There is No Evidence that Bagienski's Protected Conduct was a Substantial Factor in the Decision to Terminate Him

In Nelms v. Modisett, 153 F.3d 815, 818 (7th Cir. 1998), the Seventh Circuit

outlined the elements of a prima facie case for politically-motivated retaliation:  At the

summary judgment level, the plaintiff must "'prove by a preponderance of the evidence

that his conduct was constitutionally protected, and that the protected conduct was a

substantial factor in the decision to terminate him.'"  Id. (quoting Garrett v. Barnes, 961

F.2d 629, 632 (7th Cir.1992)). "That burden," wrote the court, "is not insignificant."

Nelms, 153 F.3d at 818 (quoting Nekolny v. Painter, 653 F.2d 1164, 1168 (7th Cir. 1981).

The Seventh Circuit opinion continued:

> "A disgruntled employee fired for legitimate reasons would
> not be able to satisfy his burden merely by showing that he
> carried the political card of the opposition party or that he
> favored the defendant's opponent in the election." Nekolny v.
> Painter, 653 F.2d 1164, 1168 (7th Cir. 1981), certiorari
> denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139.  If
> [the plaintiff] is able to demonstrate that his political
> affiliation was a motivating factor in his termination, the
> burden then shifts to defendants to prove by a preponderance
> of the evidence that they had a legitimate, non-political reason
> for terminating him in order to avoid liability.  Garrett, 961
> F.2d at 632.

Nelms, 153 F.3d at 818; quoted in Neff v. Hmurovich,  261 F. Supp. 2d 1026, 1042 (S.D.

Ind. 2003) (J. Barker).

Defendants contend that Bagienski lacks any evidence to demonstrate that his

political affiliation was a motivating factor in his termination.  In their brief, Defendants

argue that "[w]ith the election of defendants Richwine and Dillon, the Board of

Commissioners shifted from majority Democrat to majority Republican.  The Board of

Commissioners makes annual appointments of individuals to head departments of county

government under the board as well as appointments to various other boards.  The majority of the incumbents in these positions were Democrats, yet Bagienski was the only incumbent not reappointed.  An individual named Kevin McNew was subsequently appointed to fill the position of superintendent of highway department.  Richwine was not aware of McNew's political affiliation at the time of his appointment."  Defs.' Memo in Supp. at 6-7.

According to Bagienski, a genuine issue of material fact exists regarding whether his discharge was politically motivated.  He testified that he was discharged in retaliation for campaigning against Richwine and for recruiting a Democrat opponent to run against Richwine in a prior County Council race, a race that Richwine ultimately lost, and that, upon Richwine's election to the Board of Commissioners, it was time for political payback.  In addition, in reaching the decision to fire him, no official meetings were conducted, and the written notice of his discharge was signed by only the Republican members of the Board.  Pl.'s Resp. at 6.

In reply, Defendants assert that, assuming both Dillion and Richwine knew Bagienski was a Democrat and assuming Richwine also knew Bagienski had campaigned for a Democrat four years previously, the evidence nonetheless fails to establish a prima facie case.  Def.'s Reply at 2, citing Nelms; see also Richwine depo., pp. 28-29; Dillon depo., p.23.

Further, Defendants argue, even if Bagienski succeeded in demonstrating that his political affiliation was a motivating factor in his termination, Defendants have established by a preponderance of the evidence that they had a legitimate, non-political

reason for terminating him, to wit, Richwine's perception of low morale at the highway department as well as Bagienski's expressed threat to sue the commissioners and the county.  Defs.' Memo in Supp. at 7; Defs.' Reply at 2.  Bagienski does not dispute Richwine's perception of low morale or that he had threatened to bring suit against the county.  Defs.' Reply at 2.

Even viewing the evidence in the light most favorable to Bagienski, it is clear that he has failed to muster a prima facie showing of politically motivated retaliation under the standards laid out in Nelms.  There is a complete dearth of evidence beyond Bagienski's self-serving statements and theories that his political affiliation was a motivating factor in his termination.  The undisputed evidence of Richwine's perception of low morale within the department as well as Bagienski's admission that he had threatened to sue the county provide a legitimate, non-political basis for his removal as Superintendent of the County Highway Department.

## 2.     The Madison County Highway Department Superintendent Position is a Policymaking Position

Defendants additionally contend that, even if Bagienski had succeeded in demonstrating that his political affiliation was a substantial factor in the decision not to reappoint him, his claim still fails because his position as Superintendent was a policymaking position.  Defs.' Memo in Supp. at 8.  Bagienski rejoins that Defendants have failed to demonstrate that political loyalty is an appropriate requirement for the position of county highway superintendent, which makes his politically based termination

unlawful.

Generally speaking, a patronage based discharge of a public employee violates the employee's First Amendment right to political association. However, "the First Amendment does not categorically limit the ability of elected leaders from surrounding themselves with loyal, like-minded subordinates. If a public employer can demonstrate a compelling reason for a dismissal based on political affiliation, then the removal may be constitutionally justified." Thompson v. Illinois Dept. of Professional Regulation, 300 F.3d 750, 755 -756 (7th Cir. 2002) (internal citations omitted). "The justification often proffered by public employers in terminating their subordinates is that such positions were 'policymaking' in nature, requiring political loyalty or confidentiality to effectively discharge required duties." Id. (citing Branti v. Finkel, 445 U.S. 507, 517-18, 100 S.Ct. 1287 (1980)). Defendants argue that Bagienski was such a "policy maker" in county government and, as such, his political affiliation mattered in terms of his effective performance.

"[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Thompson, 300 F.3d at 756 (quoting Branti, 445 U.S. at 517-18, 100 S.Ct. 1287; Rutan v. Republican Party of Illinois, 497 U.S. 62, 71 n. 5, 110 S.Ct. 2729 (1990)). "[W]e begin our analysis looking for policymaking powers or confidential relationships because those terms 'accurately describe the vast majority of offices that fall within the realm of legitimate patronage'." Thompson, 300 F.3d at 756 (quoting Meeks

v. Grimes, 779 F.2d 417, 420 (7th Cir. 1985)).  The "defendant bears the burden of

establishing the position is a confidential or policymaking position which would justify

politically motivated employment actions."  Thompson, 300 F.3d at 756 (citing Milazzo

v. O'Connell, 108 F.3d 129, 132 (7th Cir. 1997).

> Recently, in Moss v. Martin, the Seventh Circuit held:

> "If the nature of a public official's job makes political loyalty
> a valid qualification for the effective performance of his
> position, that official may be terminated on the basis of his
> political affiliation.  Riley v. Blagojevich, 425 F.3d 357, 359
> (7th Cir.2005) (citing Elrod v. Burns, 427 U.S. 347, 367-68,
> 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Branti v. Finkel, 445
> U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)).  To
> determine whether political loyalty is a valid qualification, we
> consider whether the employee's position entailed "the
> making of policy and thus the exercise of political judgment."
> Allen v. Martin, 460 F.3d 939, 944 (7th Cir. 2006) (quoting
> Kiddy-Brown v. Blagojevich, 408 F.3d 346, 355 (7th Cir.
> 2005)). We also consider the degree of discretion and
> responsibility exercised in the position by examining the
> official job description for the position. Id. at 944-945; Selch
> v. Letts, 5 F.3d 1040, 1044-45 (7th Cir.1993). "We only look
> past the official job description where the plaintiff
> demonstrates systematic unreliability." Allen, 460 F.3d at
> 944. To show such systematic unreliability, a plaintiff "must
> provide specific facts demonstrating that the description was
> unreliable and unauthoritative." Id.

473 F.3d 699-70 (7th Cir. 2007).  In Moss, the Seventh Circuit ruled that it did not have

before it sufficient evidence to conclude whether political loyalty was a valid

qualification for the Chief of the Highway Sign Shop position within the Illinois

Department of Transportation.  Id. at 699.  The court noted that the use of buzz words in a

position description "such as 'formulates policies,' 'broad latitude' and 'substantial

independent judgment' in a position description does not transform professional or

technical judgment into political judgment. . . ."  Moss, 473 F.3d at 699.

In Tomczak v. City of Chicago, 765 F.2d 633, 641 (7th Cir.), cert. denied, 474

U.S. 946 (1985), a City of Chicago employee who held the second highest position in the

City's water department brought an action alleging that his dismissal violated the

prohibition against patronage dismissals.  In deciding in favor of the City, the Seventh

Circuit explained:

> The primary function of any local governmental entity is the
> provision of services such as police and fire protection, public
> schools, hospitals, transportation, and libraries, as well as
> quasi-utility functions such as water, garbage, and sewage
> services.  Elections often turn on the success or failure of the
> incumbent to provide these services, and, as campaigns
> develop, the opposing sides put forth varying proposals about
> how best to provide services.  While the ultimate goal of all
> sides might be the same, there is clearly room for principled
> disagreement in the development and implementation of plans
> to achieve that goal.

Id.  The Seventh Circuit continued, stating that the defendant city:

> fulfilled its burden under Branti to establish that "party
> affiliation is an appropriate requirement for the effective
> performance of the public office involved." Branti v. Finkel,
> 445 U.S. at 518, 100 S.Ct. at 1294. Plaintiff's position
> involved meaningful input into decisionmaking in areas
> where there could be principled disagreements. Nekolny v.
> Painter, 653 F.2d at 1170.

Tomczak, 765 F.2d at 643.

Thereafter, in Selch v. Letts, the Seventh Circuit explained that "the successful

implementation of policy in the area of highway maintenance would likely have

substantial effect on the public's perception of the Democratic administration."  5 F.3d

1040, 1046 (7th Cir. 1993).  Similarly, in Gentry v. Lowndes County, Mississippi, the

Fifth Circuit held that party affiliation was an appropriate consideration for the county

road manager.  337 F.3d 481, 487 (5th Cir. 2003).  "Roads in rural Mississippi are the

political lifeblood of elected officials and the public's view of the elected supervisors

depends greatly on the road manager's performance and supervision of employees."  Id.;

see also Allen, 460 F.3d at 945 ("[T]he effective and reliable execution of the Bureau's

audit function is of great political value.")

Defendants argue that, "for Madison County, the position of supervisor of the

county highway department not only has significant input into the question of where and

when work on the road is completed, but also is charged with receiving, investigating and

responding to complaints of road conditions. . . ."  Defs.' Memo. in Supp. at 12.  The

supervisor of the highway department "has significant input into governmental

decisionmaking regarding the county roads of Madison County in the form of his

participation in the budget process, the long and short-term planning process, the hiring

and training of personnel, [in] responding to citizen complaints, and generally making

recommendations regarding the implementation of the goals and objectives of the county

board of commissioners as [they] relate[] to the county roads."  Defs.' Memo in Supp. at

13.

In contrast, Bagienski maintains that the position of county highway

superintendent "is mainly one of carrying out the directives of the commissioners as they

relate to the maintenance of county roads and bridges."  Pl.'s Resp. at 7.  The

superintendent's authority, he says, was very limited and most often requiring final action

by the commissioners, which made the political affiliation of the superintendent

irrelevant.  Id.  Bagienski further argues that "Defendants have failed to show how having an opposition party loyalist in the position in question could reasonably serve to threatened the policy goals of the party in power as they relate to the county highway department."  Pl.'s Resp. at 8.

The court looks to the "powers inherent in a given office, rather than the actual functions the occupant of that office performed."  Heck v. City of Freeport, 985 F.2d 305, 309 (7th Cir. 1993); see also Tomczak, 765 F.2d at 640-41 (stating: "[I]f an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses task that render his political affiliation an appropriate prerequisite for effective performance.")

The job description for the highway department supervisor position includes these fuctions:

> – "Plans, assigns and directs manpower and material resources to maintain all county roads, rights-of-way, and related areas in a clean manner and to ensure the safety of users during routine and emergency circumstances." (Position Description, Auker aff., ex. 1.)
>
> – Evaluates equipment, maintains an inventory of supplies and recommends purchases of equipment and supplies to the county commissioners.  Id.
>
> – Formulates, prepares and submits the department's budget and administers it after approval.  Id.
>
> – Oversees the hiring, training, discipline and evaluation of staff.  Id.
>
> – "Receives and investigates County road complaints from citizens, and initiates appropriate action to resolve valid complaints."  Id.

Clearly, this position involves the ability to plan and develop budget requests, to

develop departmental personnel policies and to formulate long and short-range construction and maintenance plans.  Defs.' Memo in Supp. at 2, citing Auker aff., ex. 1, p. 2.  Further, the superintendent is "required to exercise independent judgment in making decisions and recommendations to oversee and direct the operations of the County Highway Department."  Id.  He "receives general guidelines and instructions from the County Commissioners, and is responsible for directing the department in implementing policies and procedures in manners consistent with County goals and objectives.  Work os [sic] generally reviewed by the Commission to determine overall soundness of judgement and attainment of objectives."  Id.

        That the superintendent's responsibilities are not rigidly or specifically defined, but are broad and general in scope, is further evidence of its being a policymaking position.  Selch, 5 F.3d at 1043-44 ("An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policy making position."  Id. (quoting Elrod, 427 U.S. at 368)).  In addition, the Superintendent's job responsibilities involve to a substantial degree the exercise of discretion.  For example, the person holding that position plans, assigns and directs manpower and material resources to maintain all county roads in a clean manner in both routine and emergency circumstances.  Clearly, Bagienski's position required him to provide meaningful input into decisionmaking in contexts that could give rise to principled disagreements.  See Tomczak, 765 F.2d at 643.  An opposition party loyalist serving as the county highway superintendent could easily undermine the policy goals of the party in power.  See Selch, 5 F.3d at 1044.

As with the superintendent in <u>Selch</u>, Bagienski's "potential impact on the actual or perceived implementation of policy is most readily apparent in the area of investigating and taking corrective action on complaints and information requests." <u>Selch</u>, 5 F.3d at 1047. Bagienski's position imposed on him the obligation to receive and investigate complaints of road conditions from citizens and respond appropriately to such complaints, which necessarily "require[d] the exercise of decision-making authority and political sensitivity." <u>Id.</u>

Bagienski's response brief omits any discussion of the powers inherent in the highway supervisor position, instead focusing on tasks which he asserts he actually performed. See Defs.' Reply at 4, citing Pl.'s Resp. at 3, 7. Such an approach falls short, because the Court is directed only to "look past the official job description where the plaintiff demonstrates systematic unreliability," and there has been no such showing here. <u>See</u> <u>Allen</u>, 460 F.3d at 944. To show systematic unreliability, a plaintiff "must provide specific facts demonstrating that the description was unreliable and unauthoritative." Bagienski clearly has not done that. <u>Id.</u>

The position description for Superintendent of county highways demonstrates that it is, without doubt, a "policymaking" position requiring meaningful input into decision making in areas where there could be principled disagreements. <u>See</u> <u>Tomczak</u>. A primary function of county government, including Madison County, is the provision and maintenance of public roads and office holders of opposing political parties could reasonably differ on how best to provide or to prioritize these services. While ultimately all might be expected to agree on the end result, there is ample room for principled

disagreement in the development and implementation of plans to achieve that goal. Therefore, even if the Court were to determine that Bagienski was terminated due to his political affiliation, because his position was such that his political affiliation was a legitimate and relevant consideration, he would not prevail in this challenge to his termination.

Bagienski was not eligible for constitutional protections against political termination because the duties of highway superintendent were such as to make his political affiliation a legitimate consideration.  Thus, summary judgment shall be GRANTED in favor of Defendants on Plaintiff's First Amendment claim in Count I.

**B.     Due Process Claim**

Bagienski's Complaint also alleges that, by terminating him without any formal proceeding being conducted by the Board of Commissioners, Defendants violated his right to due process (Complaint, par. 12).  Defendants challenge Bagienski's due process claim on the grounds that he had no protected property interest in his continued employment with Madison County.

To establish a due process claim, Bagienski must demonstrate: "(1) that he had a constitutionally protected property interest, (2) that he suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due process of law."  Moss v. Martin, 473 F.3d 694, 700 (7th Cir. 2007) (citing Kiddy-Brown, 408 F.3d at 360; Polenz v. Parrott, 883 F.2d 551, 555 (7th Cir. 1989)).  A protected property

interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract.  Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 943 (7th Cir. 1996).

According to Defendants, because Bagienski has conceded that no statute or contract entitles him to hold the position of superintendent of the highway department, he had no protectable property interest for purposes of this due process claim.  Defs.' Memo in Supp. at 14, citing Bagienski depo., pp. 35-36.

Faced with these arguments, Bagienski appears to abandon his due process claim by failing to identify what, if any, property interest his due process claim is based upon. When it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).  Based on Bagienski's failure to identify any property interest, which is, as we have noted, an essential element of his due process claim, and given his admission that no statute or contract entitles him to occupy the position of superintendent of the highway department, summary judgment shall be GRANTED in favor of Defendants on the due process claim as well.

### III.    Count II:    State Law Breach of Employment Agreement

In Count II of his Complaint, Plaintiff has alleged that Defendants breached Article 10 of the Collective Bargaining Agreement existing between the County Highway

Department and the workers of the Department represented by the American Federation

of State, County and Municipal Employees, Council 62, AFL-CIO Local 3609.

Having ruled on Plaintiff's federal claims in granting Defendants' motion for

summary judgment, Bagienski requests that the remaining breach of contract claim be

remanded to state court.  Pl.'s Resp. at 8-9.  The only basis for federal jurisdiction over

Bagienski's state-law claims is pursuant to "the federal supplemental jurisdiction, 28

U.S.C. § 1367, which allows federal courts to decide state-law claims that are outside the

federal diversity jurisdiction if they are so closely related to the plaintiff's federal-law

claims as to be in effect part of the same case."  Williams Electronics Games, Inc. v.

Garrity, 479 F.3d 904, 906 (7th Cir.  2007).

The criteria for declining to exercise supplemental jurisdiction are set forth in Title

28, United States Code, section 1367(c), as follows:

> The district courts may decline to exercise supplemental
> jurisdiction ... if-
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or
> claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has
> original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling
> reasons for declining jurisdiction.

The plain text of subsection (c)(3) expressly authorizes a court to decline to resolve a

supplemental claim when the federal claims have dropped out of the case.  See Williams,

479 F.3d at 906.  Thus, generally speaking, when all federal law claims have been

dismissed before trial, the pendent claims should be left to the state courts.  <u>Wright v.</u>

<u>Assoc. Insur. Co., Inc.</u>, 29 F.3d 1244, 1252 (7th Cir. 1994) (citing <u>United Mine Workers</u>

<u>of Am. v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966)).  However, the Seventh

Circuit has identified three situations in which jurisdiction over supplemental claims

should be retained, even when the federal claims have dropped out:

> where the statute of limitations would bar the refiling of the
> supplemental claims in state court (in fact section 1367(d)
> explicitly tolls the statute of limitations for 30 days after
> dismissal of a supplemental claim, to allow the plaintiff to
> refile the claim in state court without being time-barred; <u>see</u>
> <u>Edwards v. Okaloosa County</u>, 5 F.3d 1431, 1433 n. 1 (11th
> Cir.1993) (per curiam)); where substantial federal judicial
> resources have already been expended on the resolution of the
> supplemental claims; and where it is obvious how the claims
> should be decided.

<u>Williams</u>, 479 F.3d at 907 (referencing <u>Wright</u>, 29 F.3d 1244).

     Here, remand of the state court claims is clearly warranted, pursuant to 1367(c)(3).

The three situations under which federal jurisdiction should be retained over state law

claims after the federal claims have been resolved are not applicable here.  <u>See</u> <u>Williams</u>,

479 F.3d at 907; <u>Wright</u>, 29 F.3d at 1244.  The parties do not suggest, and we have no

reason to believe, that the breach of contract claim will be barred by the statute of

limitations, if it is remanded to state court.  <u>See</u> <u>Nelson v. Stewart</u>, 422 F.3d 463 (7th Cir.

2005) (affirming the district court's decision to remand the claims against the individual

defendants to state court).  In addition, this case is in its early stages and the briefing on

the breach of contract issue remains largely undeveloped.[6]  At this point, the burden of resolving the state-law claims would be identical between a federal or a state court. Judicial economy thus is not served by this federal district court's retention of jurisdiction. Wright, 29 F.3d at 1251.  Though the parties have advanced various interpretations of the employment agreements and the issue of Bagienski's inclusion within the terms of these agreements, the outcome of this breach of employment agreement remains unclear.  Thus, we remand Count II, the state law breach of contract claim, to state court.

<u>Conclusion</u>

For the forgoing reasons, summary judgment is <u>GRANTED</u> in favor of Defendants on Count I of Plaintiff's Complaint alleging civil rights violations pursuant to 42 U.S.C. § 1983.  The remaining unresolved state law breach of employment agreement in Count II is <u>REMANDED</u> to the Madison Superior Court.  IT IS SO ORDERED.

Date:  ____04/30/2007_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[6]  Less than four pages in Defendants' "Memorandum of Law in Support of Motion for Summary Judgment" and approximately six pages in Plaintiff's "Brief in Opposition to Defendants' Motion for Summary Judgment" and three pages in Defendant's "Reply Brief in Support of Motion for Summary Judgment" were devoted to the breach of contract issue.

Copies to:

Timothy Sean Lanane
tslanane@sbcglobal.net

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com